UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN JUNE MCCONER, # 401888,    )
                                )
                  Petitioner,   )
                                )         Case No. 1:16-cv-1144
v.                              )
                                )         Honorable Robert J. Jonker
SHERRY BURT,                    )
                                )
                  Respondent.   )
_____)

## **REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's conviction stems from the fatal beating of Dale Glenn outside petitioner's Detroit home on July 28, 2011.  On February 10, 2012, a Wayne County Circuit Court jury found him guilty of second-degree murder, MICH. COMP. LAWS § 750.317.   The trial court sentenced petitioner to twenty to forty years' imprisonment.

After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition.  He seeks federal habeas corpus relief on the same grounds rejected by the Michigan Court of Appeals:

I.    Petitioner was deprived of due process by pervasive prosecutorial misconduct in the prosecutor's repeated, unfounded assertions that witnesses had been intimidated.

II.   Petitioner's constitutional rights were violated where the trial court failed to develop a factual basis for the intelligent exercise of challenges during *voir dire* by asking generalized leading questions, admonishing potential jurors who admitted partiality, and refusing to permit petitioner's attorney to conduct *voir dire*.

> III.    Ineffective assistance of counsel because counsel failed to investigate and present witnesses on petitioner's behalf which ultimately prejudiced petitioner.

(Am. Pet., 6-11, ECF No. 4, PageID.81-87).

Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit.  Further, respondent argues that Ground I is also barred by procedural default.[1]  (ECF No. 8).

Chief Judge Jonker has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.  Petitioner has not shown that the state court decision rejecting the grounds raised in the petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  I recommend that the petition be denied on the merits.

---

[1]This Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

## <u>Standard of Review</u>

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ((" '[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits " 'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.' "  *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *see Woods*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted). Further, under section 2254(d)(1), "habeas relief may be granted only if the state

court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of,' Supreme Court precedent that was 'clearly established' at the time of the adjudication." *Shoop v. Hill*, 139 S. Ct. 504 (2019) (*per curiam*).

An unreasonable application of the Supreme Court's holding must be " 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)); *see Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (*per curiam*).  Rather, "[a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (*per curiam*). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA."  *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 567 U.S. at 48-49); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' ").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."

-5-

*Wood v. Allen*, 558 U.S. 290, 301 (2010).  Section 2254(d)(2) requires that this Court accord the state trial court substantial deference.  If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.  *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015).

## Proposed Findings of Fact

### A.    Circuit Court Proceedings

Petitioner's trial began on February 2, 2012, and it concluded with the jury's verdict on February 10, 2012, finding him guilty of second-degree murder.  (TTI-TTVI, ECF No. 9-6 through 9-11).

### 1.    Jury Selection

Judge Annette Berry conducted the *voir dire*. The prosecutor and defense counsel had provided the judge with a list of questions that they wanted her to ask potential jurors.  Judge Berry denied petitioner's attorney's request to conduct his own *voir dire*.  The judge noted that the attorneys had the opportunity to approach the bench and request that certain questions be asked.  All the jurors selected indicated that they could be fair and impartial.  (TTI, 6-8, 14-154, ECF No. 9-6, PageID.216-18, 224-364).

One prospective juror stated that he was "partially" a racist, and that his brother and a "good buddy" were police officers.  He did not want to sit on a homicide case and stated that he could not be fair.  (*Id.* at 80-83, PageID.290-93).  Another prospective juror, at age 61, considered himself an old person who should not have to

serve on a jury. He related that he had been convicted three times for alcohol-related driving offenses, that he had received unfair treatment in one trial, and that he could not be fair and impartial. (*Id.* at 90-96, PageID.300-06). These individuals were excused for cause and did not serve on petitioner's jury. (*Id.* at 82-83, 96, PageID.292-93, 306).

### 2.   Trial

The trial court judge gave the jury its preliminary instructions, including the instruction that opening statements and closing arguments are not evidence. (*Id.* at 158, PageID.368). The attorneys then gave their opening statements. (*Id.* at 162-87, PageID.372-97). Before the jury heard testimony from any witness, the judge reiterated that the opening statements were not evidence. (TTII, 11, ECF No. 9-7, PageID.409).

DB,[2] the prosecution's primary witness, was sitting outside petitioner's house during the offense. DB testified that, as Dale Glenn was walking down the street, petitioner's co-defendant, William Smith,[3] called him over. When Dale Glenn approached, Mr. Smith struck him in the head with a 40-ounce beer bottle, causing Mr. Glenn to fall to the cement sidewalk. Mr. Smith then kicked and stomped Dale Glenn several times in his head and face. Petitioner, who had been barbequing nearby, walked over and joined in the assault by kicking Mr. Glenn. The beating

---

[2] The Michigan Court of Appeals referred to some witnesses only by their initials and one witness as the nephew of the victim, Dale Glenn. The same pattern is followed here for clarity.

[3] Petitioner and William Smith were tried jointly, before separate juries.

stopped when it was interrupted by oncoming cars.  Petitioner and William Smith then carried Dale Glenn across the street, dumped him in a vacant lot, and hit him a few more times.[4]  (TTII, 117-70, 184-210, ECF No. 9-7, PageID.515-68, 582-608; TTIII, 87-114, ECF No. 9-8, PageID.697-724).

MG, petitioner's neighbor, testified that she was appearing in court under a subpoena.  She stated that she did not want to testify because things happen to people who testify.[5]  She denied telling police that she was afraid that her family would be killed.  MG testified that she heard a thumping noise, and about ten minutes later when she looked out her front door, she saw two black men carrying something away from the curb into a vacant lot, and she called the police.  MG denied telling Officer Jeb Rutledge of the Detroit Police Department that petitioner was one of the two men that she saw, and that they were carrying what appeared to be a body.  (TTII, 35-49, 59-115, ECF No. 9-7, PageID.433-47, 457-513).  Officer Rutledge testified that MG reported that petitioner, her neighbor, was one of the two men that she saw moving what appeared to be a body.  (TT III, 121-44, ECF No. 9-8, PageID.731-54).

---

[4] During the questioning of DB, Judge Berry excused the juries and reminded DB that he was under oath.  She noted for the record that DB was "sitting back slouching in his chair acting like he [didn't] have to participate in the line of questioning." (TTII, 135, PageID.534).  When the judge remined DB that he was a subpoenaed witness and that he had to tell the truth, DB's response was to ask:  "So what's my right if I don't remember anything?"  (*Id.* at 136-37, PageID.535-36).

[5] During MG's testimony, the trial court judge found it necessary to halt questioning and remove the juries from the courtroom.  Darnell Mitchell, a spectator seated next to one of petitioner's relatives, had been "staring down" the elderly witness.  Mr. Mitchell denied being present to intimidate the witness.  The judge warned Mr. Mitchell that she would not tolerate such behavior.  (TTII, 49-59, ECF No. 9-7, PageID.447-57).

Dale Glenn's nephew testified how he found his uncle in the lot across from petitioner's house.[6]  It appeared that Dale Glenn had been beaten, but he was still alive.  (TTIII, 144-96; ECF No. 9-8, PageID.754-807).  Dale Glenn was taken to the hospital where he died the next day.  The cause of death was multiple blunt force trauma to the head.  (TTII, 16-20, 27, ECF No. 9-7, PageID.414-18, 425; TT III, 5-6, 156-60, ECF No. 9-8, PageID.615-16, 766-70; TTVI, 101-48, ECF No. 9-9, PageID.910-57).  The victim's nephew testified that petitioner admitted being in a fight with his uncle.  (TTIII, 167, PageID.777).

Following the close of proofs, the trial court judge gave the jury its final instructions.  They included the instructions that the opening statements and closing arguments were not evidence.  (TTV, 200, ECF No. 9-10, PageID.1258).

The jury convicted petitioner, and, on March 1, 2012, the trial court judge sentenced petitioner as previously indicated.  (Sentencing Transcript, 32, ECF No. 9-12, PageID.1337, Judgment of Sentence Commitment to Corrections Department, ECF No. 9-13, PageID.1364).

## B.    Subsequent Proceedings

Petitioner pursued an appeal in the Michigan Court of Appeals where his appellate counsel raised the issues now presented in Grounds I and II of petitioner's amended habeas petition.  (ECF No. 9-13, PageID.1372).  Petitioner raised the issues now found in Ground III in a *pro se* brief.  (*Id.* at PageID.1494).

---

[6] When asked about his reluctance to testify, this witness responded:  "nobody wants to be here in court."  (TTIII, 162, PageID.772).

On April 15, 2014, the Michigan Court of Appeals issued its decision affirming petitioner's convictions and sentence.  (Op., ECF No. 9-13, PageID.1340-56).  The Michigan Supreme Court denied petitioner's application for leave to appeal on the issues rejected by the Michigan Court of Appeals.  (ECF No. 9-14, PageID.1508, 1519).

On September 19, 2016, petitioner filed his petition for federal habeas corpus relief.  (ECF No. 1).  On November 4, 2016, petitioner filed his amended petition.  (ECF No. 4).

## Discussion

## I.    Prosecutorial Misconduct

Ground I is petitioner's argument that he was deprived of due process by pervasive prosecutorial misconduct in the prosecutor's repeated, unfounded assertions that witnesses had been intimidated.  (ECF No. 2, PageID.61-67; ECF No. 4, PageID.82; ECF No. 9-13, PageID.1380-93; ECF No. 10, PageID.1678-86).

The scope of habeas review regarding allegations of prosecutorial misconduct is narrow.  This court does "not possess supervisory powers over state court trials." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.*  Accordingly, "the appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and quotation omitted).  To be grounds for habeas corpus relief, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting

-10-

conviction a denial of due process.' " *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Parker v. Matthews*, 567 U.S. 37, 45 (2012).

Because the Michigan Court of Appeals rejected his claims for lack of merit (*see* Op., 2-8, ECF No. 9-13, PageID.1341-47), petitioner faces the significant additional hurdle of demonstrating that the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A.    Opening Statement

The Michigan Court of Appeals held that the prosecutor's opening statement did not deprive petitioner of a fair trial.  Her statements regarding witness intimidation were appropriate because they "reasonably anticipated the evidence that was produced at trial.  DB, MG, and Glenn's nephew each clearly and repeatedly testified that they did not want to be involved in this case[.]"  (Op., 4, PageID.1343).

Further, petitioner suffered no prejudice stemming from the opening statement.  His attorney used the lack of proof that DB had been intimidated "to argue that DB was simply a reluctant witness."  (*Id.*).  Defense counsel "extensively cross-examined MG," and elicited testimony that fear that her family would be killed did not appear in her police statement.  MG "would have fear about being involved in any homicide case[.]"  (*Id.*).  She was reluctant to testify "because she would not want to be a witness or come to court and testify in any case."  (*Id.*).

In addition, the jury had been instructed that the lawyers' statements are not evidence. (*Id.* at 5, PageID.1344). "A jury is presumed to follow its instructions." *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

B.    Questioning MG

The Michigan Court of Appeals rejected petitioner's claim of prosecutorial misconduct in the questioning of MG. The testimony was not elicited to demonstrate petitioner's consciousness of guilt. Rather, it was elicited to address MG's credibility:

> MG, believing that her name would not be used, gave detailed statements to the police regarding her observations of her next-door neighbor, [petitioner], on the day of the incident. However, MG's identity as a witness was later revealed. At trial, MG was reluctant to answer the prosecutor's questions, insisted that she could not recall certain observations, and denied ever making several statements to the police. For instance, she denied telling the police that petitioner matched the description of one of the two men she observed carrying an object into the street, and that she believed that the object was a body.

(Op., 5, PageID.1344). The prosecutor's questions regarding the possibility of intimidation were proper "because the issue of MG's concern for her and her family's safety tended to explain the reason for MG's inconsistent cooperation and statements and bore directly on her credibility as a witness." (*Id.*).

C.    Closing Argument

The Michigan Court of Appeals rejected petitioner's claims of prosecutorial misconduct in closing argument. (Op., 5-8, PageID.1344-47). The prosecutor had made a remark in closing argument to the effect that a witness faced ramifications for testifying at trial, a statement that was unsupported by the evidence. (*Id.* at 6, PageID.1345). The court noted, however, that petitioner failed to establish prejudice

stemming from this error:

> [T]he prosecutor did not indicate what "ramifications" Glenn's nephew thought he faced.  The prosecutor did not indicate that the witness would be harmed, but discussed how he was "torn" because the incident involved a friend who was like a family member and an actual relative. The prosecutor asserted throughout trial that Glenn's nephew did not want to be involved, and Glenn's nephew testified that the situation was "hard."  Moreover, the nephew did not provide the crucial testimony that inculpated [petitioner].    Considering the limited relevance of the nephew's testimony, and the trial court's instructions that the lawyers' statements and arguments are not evidence, there is no reasonable likelihood that the prosecutor's improper statement caused [petitioner's] conviction."

(*Id.*).

The Court of Appeals held that all other instances where petitioner claimed improper argument, "the challenged remarks were based on the evidence and reasonable inferences arising from the evidence as they related to the prosecutor's theory of the case."  (*Id.*).  Further, petitioner suffered no prejudice.  "[T]he trial court's instructions to the jury that the lawyers' statements and arguments are not evidence, that it was to decide the case based only on the properly admitted evidence, and that it was to follow the court's instructions were sufficient to dispel any possible prejudice."  (*Id.* at 7-8, PageID.1346-47).

Even assuming that petitioner had shown a constitutional violation, the "harmless-error standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 622-23 (1993), applies to prosecutorial misconduct claims on federal habeas review."[7]  *Roby*

---

[7] Constitutional errors are deemed harmless on habeas review unless the petitioner establishes that they "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. at 638.

*v. Burt*, No. 17-2043, 2018 WL 1176512, at *3 (6th Cir. Feb. 14, 2018) (citing *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005)).  Further, the decision of the Michigan Court of Appeals finding that any putative prosecutorial misconduct was harmless error is entitled to AEDPA deference.  *See Miller v. Colson*, 694 F.3d 691, 699-700 (6th Cir. 2012) (state appellate court finding of harmless error entitled to AEDPA deference). Thus, this Court "may not grant [petitioner]'s habeas petition ... if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003).  Petitioner has not carried his heavy burden under 28 U.S.C. § 2254(d).

Petitioner invokes *Berger v. United States*, 295 U.S. 78 (1935), in support of his prosecutorial misconduct claims.  (ECF No. 2, PageID.62, 64; ECF No. 9-13, PageID.1380; ECF No. 10, PageID.1678-80).  The prosecutor in petitioner's case did nothing that resembles the outrageous conduct of the prosecutor in the *Berger* case. Further, petitioner's reliance on *Berger* is misplaced because it was "decided on direct review where the Court could 'broad[ly] exercise [its] supervisory power.' " *Henley v. Bell*, 487 F.3d 379, 389 (6th Cir. 2007) (quoting *Darden*, 477 U.S. at 181).  "The appropriate standard of review for such a claim [of prosecutorial misconduct] is 'the narrow one of due process, and not the broad exercise of supervisory power.' " *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).  Petitioner has not addressed, much less carried his burden of demonstrating that the Michigan Court of Appeals "applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell*,

-14-

540 U.S. at 18.

I find that the decision of the Michigan Court of Appeals rejecting Ground I was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Ground I does not provide a basis for habeas corpus relief.

## II.    *Voir Dire*

In Ground II, petitioner complains about the way in which the trial court conducted *voir dire*, including the manner of questioning potential jurors, admonishing potential jurors who admitted partiality, and refusing to permit petitioner's attorney to directly question prospective jurors. (*See* ECF No. 4, PageID.83; ECF No. 9-13, PageID.1394-99; ECF No. 10, PageID.1687).

The Michigan Court of Appeals rejected petitioner's arguments for lack of merit. It noted that a petitioner did not have the right to have counsel conduct *voir dire* or to any other specific procedure for *voir dire*. (Op., 8, ECF No. 9-13, PageID.1347). The *voir dire* provided petitioner "with a reasonable opportunity to ascertain whether any of the potential jurors were subject to peremptory challenge or challenge for cause, and also provided the trial court with sufficient information to make an independent assessment of bias and to guard against potential bias." (*Id.*). The trial court "covered the salient concepts of the presumption of innocence, burden of proof, and reasonable doubt, and elicited relevant information regarding the

-15-

prospective jurors' backgrounds.  The court also clearly instructed the jurors that a verdict could not be based on emotion or sympathy[.]"  (*Id.*).  Further, the Court of Appeals noted that the "the attorneys were permitted to approach the bench and request other specific questions they wanted the court to ask the prospective jurors" and petitioner's attorney did not avail himself of that option.  Petitioner failed to identify any relevant question that the trial court failed to give.  (*Id.*).

As a result of the court's *voir dire*, petitioner used ten of his twelve peremptory challenges.  The court also dismissed prospective jurors for cause.  (*Id.*).  The *voir dire* "was sufficient to provide [petitioner] with a reasonable opportunity to ascertain whether any of the prospective jurors were not impartial."  (*Id.* at 9, Page ID.1348).

The Michigan Court of Appeals rejected petitioner's argument that the trial court improperly admonished two prospective jurors who expressed partiality. "When the prospective jurors gave their reasons about why they could not serve, the trial court merely explored their reasons to ensure clarity and made comments within the context of discussing those reasons."  (*Id.*).  Further, petitioner suffered no prejudice because the trial court judge "ultimately excused both prospective jurors for cause."  (*Id.*).  Petitioner failed to "demonstrate[] that the trial court's voir dire of the two excused jurors tainted the impartiality of the remaining jury panel.  Each seated juror stated that he or she could be impartial and would follow the court's instructions."  (*Id.*).

-16-

Petitioner has not addressed, much less has he carried his burden under 28 U.S.C. § 2254(d).  I find that Ground II does not provide a basis for habeas corpus relief.

## III.    Ineffective Assistance

In Ground III, petitioner claims ineffective assistance of trial and appellate counsel.    (ECF No. 2, PageID.68-72; ECF No. 4, PageID.85; ECF No. 9-13, PageID.1496-1501; ECF No. 10, PageID.1687-93).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id*. (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

It is well understood that where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). An appellant has no constitutional right to have every non-frivolous issue raised on appeal. " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.

It is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

The Michigan Court of Appeals applied the *Strickland* standard, and it rejected all petitioner's claims of ineffective assistance of trial and appellate counsel. (Op., 9-10, ECF No. 9-13, PageID.1348-49). The affidavits of Louisa Taylor and Davis Bowers

-18-

did not provide factual support for petitioner's argument that their testimony could have provided him with a substantial defense. The decision against calling these witnesses was a matter of sound trial strategy, based on counsel's credibility assessment. (*Id.* at 10, PageID.1349). Petitioner's appellate counsel was not ineffective when she focused on stronger issues and declined to raise petitioner's meritless claims of ineffective assistance of trial counsel. (*Id.*).

Because the Michigan Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that

-19-

a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Supreme Court has described this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

Petitioner has not addressed, much less has he carried, his burden here. *See* 28 U.S.C. § 2254(d). I find that Ground III does not provide a basis for habeas corpus relief.

## IV.    Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."

-20-

28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that … jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claims would be debatable or wrong.  Therefore, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.  I also recommend that a certificate of appealability be denied.


Dated:  March 12, 2019                    /s/  Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge


### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).